IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CR-120-D

KEJUAN TIZOM SHABAZZ SMITH,　)
　　　　　　　　　　　　　　　　)
　　　Petitioner,　　　　　　　　)
　　　　　　　　　　　　　　　　)　　MEMORANDUM IN SUPPORT
　　　v.　　　　　　　　　　　　　)　　OF MOTION TO DISMISS
　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　)
　　　Respondent.　　　　　　　　)

Respondent, by and through the United States Attorney for the Eastern

District of North Carolina, submits this memorandum in support of its Rule 12(b)(6)

motion to dismiss Petitioner's § 2255 motion to vacate, set aside, or correct his

sentence [D.E. 580, 581, 582, 592, 593].

## **SUMMARY OF ARGUMENT**

Petitioner is an "extraordinary, dangerous criminal" who became the leader of

a Wilmington Bloods gang involved in heroin trafficking, violent crimes, and

conspiracies to commit murder of rival gang members.   Sentencing Transcript

[D.E.399] ("Sent. Tr.") at 29:13-30:25; 33:05.   In this capacity, Petitioner "directed

and organized and led and recruited the activities of the scores of subordinate gang

members" responsible for drug trafficking and "acts of violence in the streets of

Wilmington."   Id. at 23:16-20.   Petitioner also had control of the gang's arsenal of

weapons, which he could, and did, summons for use in violent crimes "at the drop of

a hat."   Id. at 25:02-26:16.

1

On February 28, 2017, Petitioner and several of his gang underlings were charged by federal indictment with drug trafficking and gun charges [D.E. 92]. On April 4, 2017, Petitioner, without a plea agreement, knowingly and voluntarily pleaded guilty to all counts. Arraignment Transcript [D.E. 398] ("Arr. Tr.") at 23:11-25; 30:04-20. On September 13, 2017, the Court correctly found that Petitioner qualified as a career offender[1] and imposed a within-Guidelines sentence of 327 months' imprisonment. Sent. Tr. at 32:01-03. The Court made it clear that it would have imposed the same 327-month sentence as a variant sentence even if Petitioner had not been subject to a career offender enhancement. Id. at 32:14-33:09.

Petitioner appealed his sentence on several grounds, including a challenge to his career offender status, which was rejected by the Fourth Circuit on October 2, 2018 [D.E. 495 at 3]. Petitioner filed a petition for rehearing, which was denied by the Fourth Circuit on November 6, 2018 [D.E. 499]. Petitioner's judgment became final on February 4, 2019, and his time to file a § 2255 motion expired on February 4, 2020. Sup. Ct. R. 13.1; 28 U.S.C. § 2255(f). On August 4, 2020, Petitioner filed an untimely § 2255 motion pursuing frivolous legal claims cloaked under the guise of ineffective assistance of counsel [D.E. 580].

Petitioner's motion should be dismissed in its entirety because it was filed after

---

[1] The Court relied upon Petitioner's common law robbery conviction set forth in paragraph 59 of the Presentence Investigation Report [D.E. 294] ("PSR") and "his conviction in Paragraph 61 [of the PSR] for conspiracy to sell and deliver heroin **and** sale and delivery of heroin" at the two predicate offenses supporting his "career offender" status. Sent. Tr. at 7:13-19 [emphasis added]; 8:12-14. A copy of the judgment and commitment relating to Petitioner's controlled substance offense is found at D.E. 80-1.

the one-year period of limitation provided in 28 U.S.C. § 2255(f). Alternatively, dismissal is warranted because Petitioner procedurally defaulted on such claims by failing to raise them in district court or on direct appeal. Petitioner's claim of ineffective assistance of counsel fail because he is unable to show that his counsel's representation was deficient or that any perceived deficiency prejudiced him.

## FACTUAL AND PROCEDURAL STATEMENT

### I.      Petitioner long history of gang leadership, violent criminal acts, and drug trafficking.

On the evening of March 24, 2009, Petitioner committed a home invasion with the intent of kidnapping and robbing his victim. PSR at ¶ 59. After holding his victim at gun point, Petitioner robbed the victim of $430 and then struck the victim "in the face with a 'lock blade knife.'" <u>Id.</u> Petitioner was arrested on March 26, 2009, and pleaded guilty to common law robbery and second-degree burglary, and was sentenced to a term of 13-16 months custody. <u>Id.</u>

On November 30, 2011, Petitioner was convicted of possession of a firearm by a felon and sentenced to a 36-month term of probation. <u>Id.</u> at ¶ 60. On January 6, 2014, Petitioner "sold a confidential informant .04 grams of heroin." <u>Id.</u> at ¶ 61. On February 5 and 6, 2014, Petitioner sold unspecified amounts of heroin to a confidential informant. <u>Id.</u> On April 16, 2014, Petitioner was arrested and charged with felony "Sell and Deliver Heroin" in connection with the January 2014 sale of heroin and with two counts of "Conspiracy to Sell and Deliver Heroin" in connection with the two transactions in February 2014. <u>Id.</u> Petitioner ultimately pleaded

guilty to the three charges and was sentenced to a term of 10 to 21 months custody. Id.

Upon his release, Petitioner quickly advanced "to become the leader, the five-star general of one of the most violent gangs around, the 9-Trey Bloods in Wilmington." Sent. Tr. at 23:08-15. As noted by the Court at sentencing,

> As part of your gang leadership role you [Petitioner] obviously were actively participating in distributing heroin in Wilmington. The conduct of the gang was captured on the Title III wiretap and through other law enforcement efforts as we've talked about here.
>
> Your criminal behavior includes not only the distribution of heroin and conspiracy to distribute heroin, but the leadership in the gang, including a conspiracy to commit murder and/or aggravated assault in connection with a rival gang member named Gullah. . . .
>
> The PSR details in a quite chilling fashion your plans in paragraphs 26 through 35 to gather up the weapons and lead a team of gang bangers to Goldsboro to murder Gullah.

Id. at 29:16-30:03. The Court also summarized Petitioner's involvement in conspiring to rob a rival gang member who went by the name "Gotti" and to assault or murder perceived gang rivals who operated under the Bloods subset known as the "BO Boys." Id. at 30:06-17; see also PSR at ¶¶ 36-47.

As to his plan to murder a rival gang leader in Goldsboro, "law enforcement received information regarding an altercation that was brewing between the defendant, Mr. Smith, and the leader of a separate 9-Trey Blood sect located in Goldsboro, North Carolina. Smith was apparently angry over that leader's

treatment of one of Smith's members who lived in Goldsboro." Arr. Tr. at 27:10-15. During intercepted calls on August 4, 2016, Petitioner instructed gang underlings to gather the gang's firearms and prepare for a hit in Goldsboro the next morning. Id. at 27:16-28:10. "At one point in the afternoon Smith posted a private video message through the mobile image messaging app Snapchat depicting dozens of firearms and a military-issued ballistics vest spread out on a kitchen table." Id. at 28:20-23.

Because Petitioner was planning to do the hit early the next morning, the Government executed a search warrant at Petitioner's residence at around 10:39 p.m. on August 4, 2016. Id. at 28:11-19, 24-25. Law enforcement seized 13 weapons, several of which were stolen, and large amount of ammunition. PSR at ¶ 33. Several of the firearms were assault rifles having attached 30 round magazines. Id. Police also recovered several extended magazines and a "military grade ballistic vest." Id.

## II. **Procedural History**

On October 19, 2016, Petitioner was charged, by Criminal Complaint, with the distribution of heroin in violation of 21 U.S.C. § 841(a)(1). [D.E. 1]. Although the Court initially issued an order appointing the Federal Public Defender to represent Petitioner [D.E. 15], within two weeks Geoffrey W. Hosford entered a notice of appearance as retained defense counsel [D.E. 61]. On November 6, 2016, the same day as entering his appearance, defense counsel Hosford filed a Request for Discovery in the case [D.E. 62].

On November 21, 2016, an Indictment was returned charging Petitioner and others with substantive drug trafficking charges [D.E. 64]. On February 28, 2017, a Superseding Indictment was returned adding additional defendants, a drug conspiracy charge, and gun charges [D.E. 92]. The charges against Petitioner were as follows: (a) Count 1 – conspiracy to distribute, and possess with intent to distribute, a quantity of heroin in violation of 21 U.S.C. § 846; (b) Counts 3, 5, 6 – distribute, and possess with intent to distribute, a quantity of heroin, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (c) Count 12 – felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and (d) Count 13 – possession of a stolen firearm in violation of 18 U.S.C. § 922(j) [D.E. 92].

On April 4, 2017, Petitioner pleaded guilty to all counts without a plea agreement. Arr. Tr. at 23:11-25. Probation found that Petitioner held a high-ranking leadership position in the UBN Nine Trey set in Wilmington which was involved in drug trafficking and violent crimes. PSR at ¶ 53. Probation determined that Petitioner was accountable for distribution of "186.35 grams of heroin and 2½ ounces of marijuana." Id. Petitioner was also found to have "possessed at least 13 firearms, including two with high capacity magazines, and four stolen firearms." Id.

In computing Petitioner's advisory Guideline range, Probation determined that Petitioner qualified as a "career offender" under U.S.S.G. § 4B1.1 based on his common law robbery conviction, see PSR ¶ 59, and his conviction for conspiracy to sell and deliver heroin and a substantive count of sell and deliver heroin, see PSR ¶

61. Notwithstanding Petitioner's status as a career offender, Probation applied the offense level under U.S.S.G. § 2K2.1 because it was greater than that provided under the career offender guideline. PSR ¶ 98. However, the career offender guideline did increase Petitioner's criminal history from category IV to category VI. Id. at ¶¶ 66-67.

Based on these computations, Petitioner's advisory guideline range was determined to be 262 to 327 months.[2] Id. at ¶ 103. Defense counsel objected to the PSR's findings regarding career offender status based on a claim that Petitioner's common law robbery conviction no longer constituted a crime of violence. Id. at pgs. 26-27. Defense counsel also objected to the PSR's decision to include a four-level upward adjustment based on Petitioner's role in the offense. Id. at pg. 27.

At the sentencing hearing held on September 13, 2017, the Court overruled Petitioner's objection regarding whether his "common law robbery" conviction qualified as a predicate crime of violence for career offender. Sent. Tr. at 9:03-12. The Court also overruled Petitioner's objection to the four-level enhancement due to his leadership position. Id. at 16:07-18:22. Based on these findings, the Court found Petitioner's advisory guideline range to be 262 to 327 months' imprisonment. Id. at 19:05-07. After considering argument of counsel, the statutory factors under 18 U.S.C. § 3553(a), and the advice of the guidelines, the Court sentenced Petitioner to

---

[2]Due to his guilty plea, Petitioner received a three-point reduction for acceptance of responsibility. PSR at ¶¶ 99-100. Had he pleaded not guilty and gone to trial, upon conviction he would have lost "acceptance of responsibility" and his advisory guideline range would have been 360 months to life imprisonment.

327 months' imprisonment. Id. at 19:15 – 32:03. The Court fashioned this sentence as 240 months on each of the drug counts (to run concurrently to each other) and 87 months on each of the two gun counts (to run concurrently to each other, but consecutive to the sentence on the drug counts) [D.E. 311 at 3].

The Court then announced that, in the alternative, had the career offender enhancement not applied, it would "impose the same sentence [327 months' imprisonment] as an alternative variant sentence." Sent. Tr. at 32:14-21. As a basis for the alternative variant sentence, the Court stated as follows:

> [Petitioner] needs and deserves a sentence in total of 327 months . . . . He's an extraordinary, dangerous criminal, he needs to be incarcerated for the time period I outlined, and I would impose this same sentence even if I miscalculated the advisory guideline range as described in *Gomez-Jimenez* and *Hargrove* . . . .

Id. at 32:22-33:08.

Petitioner filed an appeal of his sentence on September 18, 2017 [D.E. 313] based, in part, on the claim that the "district court erred by . . . sentencing Smith as a career offender." [D.E. 495 at 2]. On October 2, 2018, the Fourth Circuit affirmed Petitioner's sentence finding that the Court correctly found that "common law robbery" is a crime of violence and that the Court also "correctly determined that Smith had a prior conviction for a felony drug offense." Id. at 3. Petitioner filed a petition for rehearing with the Fourth Circuit, which was denied pursuant to an order dated November 6, 2018 [D.E. 499]. The Fourth Circuit's ruling became final on February 4, 2019. Sup. Ct. R. 13.1.

On August 4, 2020, Petitioner filed an untimely Section 2255 motion raising the following legal objections under the guise of ineffective assistance claims: (1) a challenge to his "career offender" status based on an argument that his state drug trafficking conviction felony no longer qualifies as predicate "controlled substance offense" [D.E. 581 at 3-5, 14-15; D.E. 593]; (2) an objection to the drug quantity to which he was held responsible under the PSR [D.E. 581 at 6, 15]; (3) a multiplicity challenge to his two gun convictions [D.E. 581 at 6-9, 16-17]; (4) a claim that his § 922(g) conviction must be vacated due to Rehaif v. United States, 139 S.Ct. 2191 (2019) [D.E. 581 at 9-14, 17-18; D.E. 592]; (5) a claim that his guilty plea was coerced [D.E. 581 at 13, 19]; (6) a claim that he was the victim of selective prosecution [D.E. 581-1]; and (7) a claim that appellate counsel's present inadequate argument in support of ineffective assistance [D.E. 581 at 15-16].

## ARGUMENT

### I. Standard of Review

A petitioner seeking to vacate a sentence pursuant to § 2255 bears the burden of proving that the sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the sentencing court lacked jurisdiction, that the sentence exceeded the maximum allowed by law, or that the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A petitioner must prove the grounds for collateral relief by a preponderance of evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted" tests the legal and factual sufficiency of a complaint.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering a motion to dismiss, a court is not required to accept as true a petitioner's legal conclusions.  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.  Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Giarratano v. Johnson, 521 F.2d 298, 302 (4th Cir. 2008); Iqbal, 556 U.S. at 678.

In reviewing the facts of the case, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  The court is also allowed to consider "the files and records of the case" in determining whether a motion to dismiss is warranted. 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).  Based on this standard, Petitioner's § 2255 motion should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   Petitioner's motion should be dismissed as untimely.

A motion for relief filed under § 2255 must be filed within one year after a petitioner's judgment of conviction becomes final.  28 U.S.C. § 2255(f).  In this case, Petitioner judgment was final on February 4, 2019, and his deadline for filing a § 2255 motion was February 4, 2020.  However, as to any Rehaif claim, which would

have been based on a newly recognized by the Supreme Court on June 21, 2019, Petitioner's filing deadline was extended to June 21, 2020. 28 U.S.C. § 2255(f)(2) (the one-year statute runs from the date of Supreme Court ruling recognizing new right and making such right retroactive). Based on these statutory filing deadlines, all of the claims contained in Petitioner's § 2255 motion, which was mailed on or about July 28, 2020,[3] fail as untimely and must be dismissed.[4]

### III. Even if Petitioner's § 2255 motion had been timely filed, which it was not, it would be subject to dismissal as procedurally defaulted.

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 622 (1998). Petitioner brings several frivolous challenges that he failed to raise on appeal. There are two ways to overcome procedural default – first, by

---

[3]Although Petitioner failed to include a verified date on his § 2255 motion, see D.E. 580 at 14, he included a cover letter dated July 28, 2020, see D.E. 580-1, and the envelope postmarked July 29, 2020. Even if it is assumed, under the prisoner mailbox rule, that Petitioner's § 2255 was filed on July 28, 2020, see Section 2255 Rule 3(d), it would still be untimely on all claims, including his Rehaif claim.

[4]Fully aware of the untimeliness of his § 2255 motion, Petitioner has filed a motion for equitable tolling of the statute of limitations [D.E. 582]. The Court should reject this motion because a prisoner's pro se status and lack of legal training do not constitute a "rare instance" necessary to warrant such tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Similarly, restricted access to a law library alone does not constitute the extraordinary circumstance necessary to require equitable tolling. See, e.g., Tucker v. Kingston, 538 F.3d 732, 735 (7th Cir. 2008); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001); United States v. Cicero, 214 F.3d 199, 203-04 (D.C. Cir. 2000); Corrigan v. Barbery, 371 F. Supp. 2d 325, 330 (W.D.N.Y 2005).

showing both "cause" for the procedural default and "actual prejudice," and second, by establishing actual innocence. Bousley, 523 U.S. at 622. Because Petitioner cannot satisfy either exception,[5] his § 2255 motion is also subject to dismissal as procedurally waived.

### IV. Petitioner's claims of ineffective assistance by trial counsel fail under both prongs of the Strickland test.

A defendant's Sixth Amendment right to effective assistance of counsel extends to all critical stages of a criminal proceeding, including trial and appeal. See, e.g., Laffler v. Cooper, 566 U.S. 156, 164-65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203-04 (2001). To prevail on an ineffective assistance of counsel claim, Petitioner must establish each of the following elements: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the outcome of the proceeding would have been different but for counsel's substandard representation. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). Failure to satisfy either prong defeats a petitioner's ineffective assistance claim.

Although the Supreme Court listed the performance prong first, it was careful to explain that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the

---

[5] Although ineffective assistance of counsel would defeat procedural default, as discussed below Petitioner's claims of ineffective assistance of counsel fail. As to Petitioner's Rehaif claim, as discussed below in connection with his ineffective assistance claim, Petitioner is unable to satisfy either exception.

alleged deficiencies." <u>Strickland</u>, 466 U.S. at 697. Instead, the Supreme Court noted, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Id.</u>

> ### A. **Petitioner's claims of ineffective assistance should be dismissed because he is unable to satisfy Strickland's prejudice prong**.

As to the prejudice prong, Petitioner must show that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Because Petitioner's claims fail on the legal merits, he is unable to satisfy the prejudice prong. Further, due to Court's "variant sentence," even if any of his legal arguments had merit, he would still be unable to show a "reasonable probability that, but for counsel's unprofessional errors, the result of proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

> #### 1. <u>Petitioner's attack on his "career offender" status fails on the merits and as non-cognizable.</u>

Petitioner qualified for the "career offender" enhancement under the sentencing guidelines by meeting the following three requirements: (1) being at least 18 years old when he committed the offense of conviction; (2) because his offense of conviction (§841 federal drug trafficking) is a "controlled substance offense;" and (3) because he had a prior felony crime of violence (common law robbery) and a prior

felony controlled substance offense (sell and deliver heroin).  U.S.S.G. § 4B1.1(a).

Petitioner claims that his status as a "career offender" is no longer valid because his "sell and deliver heroin" conviction no longer constitutes a "controlled substance offense" due to Fourth Circuit's opinion in <u>United States v. Whitley</u>, 737 Fed. Appx. 147, 149 (4th Cir. 2018) (unpublished).  The instant case is distinguishable from <u>Whitley</u>, which involves whether federal conspiracy to commit a drug offense constitutes a "controlled substance offense."  Unlike in <u>Whitley</u>, Petitioner's predicate drug offense was for both a conspiracy to sell and deliver heroin conviction **and** a substantive sell and deliver heroin conviction.  PSR at ¶ 61; D.E. 80-1.  This should come as no surprise to Petitioner because it was specifically noted in his PSR and by the Court during the sentencing hearing.  PSR at pg. 26; Sent. Tr. at 7:15-19.  Thus, <u>Whitley</u> does not change Petitioner's status as a career offender.[6]

Furthermore, even if Petitioner's "sell and deliver heroin" conviction was somehow interpreted as no longer qualifying as a predicate offense for career offender status, such challenge would not be cognizable in a § 2255 context.  As held by the Fourth Circuit in <u>United States v. Foote</u>, 784 F.3d 931, 932, 941 (4th Cir. 2015), a challenge to a "career offender" enhancement under an advisory guideline scheme based on a subsequent change in the law is not cognizable on collateral review in the

---

[6]Petitioner's reliance on <u>United States v. McCollum</u>, 885 F.3d 300 (4th Cir. 2018), is also misplaced.  In <u>McCollum</u>, 885 F.3d at 303, the Fourth Circuit held that conspiracy to commit murder in aid of racketeering did not constitute a crime of violence as defined in U.S.S.G. § 2K2.1.

context of a § 2255.[7]    Finally, due to the Court's variant sentence, even if Petitioner

was erroneously held to be a "career offender," which is not the case, he is unable to

show any prejudice.    Sent Tr. 32:14-33:09.

> 2.    Petitioner's challenge to the
> computation of drug weight for
> advisory guideline purposes fails under
> the prejudice prong and is not
> cognizable in a collateral attack.

Probation held Petitioner accountable for trafficking in 186.35 grams of heroin

and 2½ ounces of marijuana.    PSR at ¶ 53.    This determination is fully supported

by the information contained in the PSR and was not objected to by either party.    Id.

at ¶¶ 18-21.    Likewise, it is indisputable that the drug weight attributable to

Petitioner had no impact whatsoever on the computation of his advisory guideline

range. PSR at ¶¶ 87-103.    Even if the drug weight had been relevant to his guideline

range computation, any challenge would not be cognizable in a § 2255 context, see

United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999).    Likewise, due to the

Court's variant sentence, any success under the drug weight argument would not

change his sentence.

> 3.    Petitioner's multiplicity challenge to
> his gun convictions lacks any merit
> whatsoever.

---

[7]Likewise, any claim by Petitioner that such a challenge could be made under "savings clause" also fails as a matter of law.    Braswell v. Smith, 952 F.3d 441, 450 (4th Cir. 2020).

Petitioner claims that his separate convictions for a felon in possession of a firearm in violation of § 922(g)(1) (Count 12) and for possession of a stolen firearm in violation of § 922(j) (Count 13) violate the principle of multiplicity. This argument is meritless and should be rejected. As reasoned by the Fourth Circuit in an identical situation:

> [The] multiplicity argument fails for the simple reason that this case does not involve charges under different subparts of § 922(g); rather, this case concerns different subsections of § 922. Unlike the subparts of § 922(g), there is no question in this case that Congress has fixed separate punishments for both § 922(g) and § 922(j). Moreover, the separate sections of § 922 under which . . . [defendant] was convicted each require proof of different elements, thereby satisfying the <u>Blockburger</u> test. <u>See Blockburger v. United States</u>, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

<u>United States v. Moye</u>, 454 F.3d 390, 397 (4th Cir. 2006). Thus, this portion of Petitioner's § 2255 motion should be dismissed as a matter of law.

4. <u>Petitioner's Rehaif challenge fails on the merits and under the concurrent sentence doctrine</u>.

In <u>Rehaif</u>, the Supreme Court "abrogated the prior precedent of this Circuit, which did not require proof of a defendant's knowledge that he belonged to the relevant category [in this case convicted felon]." <u>United States v. Robert Edward Claytor</u>, Nos. 7:15-CR-70; 7:20-CV-81427, D.E. 57 (W.D.VA Jan. 7, 2021), n. 1 (hereinafter "<u>U.S. v. Claytor</u>"). As noted above, Petitioner's <u>Rehaif</u> claim must be dismissed as untimely and as procedurally defaulted. Petitioner cannot establish

"actual innocence" to the § 922(g) charge to which he pleaded guilty. See U.S. v. Claytor at 6, 9 (Petitioner in § 2255 case unable to show "actual innocence" or "cause and prejudice").[8] Petitioner's knowledge of his status as a felon is shown from his multiple felony convictions. PSR ¶ 59, 61. Any claim that he was not aware that he was prohibited from have a firearm due to his status as a convicted felon is also contradicted by his conviction in 2011 for "Possession of a Firearm by a Felon." Id. at ¶ 60. Furthermore, Petitioner plea of guilty to the charge under oath at his Rule 11 hearing, see Arr. Tr. at 23:11-25, is binding on him. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v. Moussaoui, 591 F.3d 263, 299-300 (4th Cir. 2010); United States v. LeMaster, 403 F.3d 216, 221-23 (4th Cir. 2005).

Even if Petitioner's Rehaif claim was timely, which it is not, the Court should forgo review of this conviction based on the "concurrent-sentence doctrine." The "concurrent-sentence doctrine," which is "a species of harmless-error review" applies when "a defendant seeks to challenge the legality of a sentence that was imposed for a valid conviction, but where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration." United States v. Charles, 932 F.3d 153, 160-61 (4th Cir. 2019); accord United States v. Hughes, 964 F.2d 536, 541 (6th Cir. 1992); McCoy v. Ormond, No. 3:18-CV-295, 2020 WL 2735891, at 83 (E.D.N.C. May

---

[8]As noted by the district court in Claytor, the Fourth Circuit's decision in United States v. Gary, 954 F.3d 194 (4th Cir. 2020), does not change Petitioner's burden of showing prejudice because Gary dealt with a direct appeal and "says nothing about whether a § 2255 petition must show cause and prejudice to excuse a procedural default." U.S. v. Claytor at 9. Furthermore, the holding in Gary, to which the Supreme Court has granted certiorari, has no impact on the statute of limitations issue.

26, 2020)(unpublished). Because the Court sentenced Petitioner to 87 months' imprisonment on both the § 922(g) and 922(j) convictions, to be served concurrently, any challenge to his § 922(g) is meaningless.

### 5. Petitioner's coercion claim fails on the merits.

Petitioner claims that defense counsel was ineffective by "coerc[ing]" Petitioner to plead guilty by advising him of the likelihood of a "life sentence[]"if Petitioner proceeded to trial[9] [D.E. 581 at 13, 19]. As shown from Petitioner's arraignment hearing, the Court went to great lengths to ensure Petitioner's guilty plea was entered knowingly and voluntarily. Arr. Tr. at 20-23. Petitioner repeatedly stated, under oath, that he had not been forced to enter his plea agreement. Id. at 21:15-20. Petitioner's sworn statements at his arraignment bind him to his guilty plea. Moussaoui, 591 F.3d at 299-300; Lemaster, 403 F.3d at 221-23. Thus, Petitioner is unable to establish that he was coerced to enter his guilty plea based on counsel's advice. Strickland, 466 U.S. at 694.

### 6. Petitioner's selective prosecution argument is frivolous at best.

Petitioner, without any factual basis, boldly claims that he is the victim of selective prosecution. In addition to procedurally defaulting on this issue by failing

---

[9]Defense counsel's prediction that Petitioner would likely face a life sentence if he proceeded to trial was not only reasonable, but strongly supported by the facts and applicable law in this case. As noted above, loss of "acceptance of responsibility" in this case would have increased his advisory guideline range from 262 to 327 months' imprisonment to 360 to life imprisonment. PSR at ¶¶99-103.

to raise it at the district court level or on appeal, Petitioner failed to raise it in a timely § 2255 motion. Petitioner also fails to meet his burden of showing that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." <u>Wayte v. United States</u>, 470 U.S. 598, 608 (1985). Petitioner was the highest-ranking member of a violent Wilmington Blood gang and the evidence of his involvement in drug trafficking and violent crimes was substantial. "When acting on probable cause that a crime has been committed, a government prosecutor generally enjoys unfettered discretion in the decision whether to prosecute." <u>United States v. Olvis</u>, 97 F.3d 739, 743 (4th Cir. 1996). Thus, Petitioner's unsupported claim of "selective prosecution" fails and should be rejected by the Court.

> 7. <u>Petitioner's claim that appellate counsel failed to successfully argue ineffective assistance is meritless</u>.

Petitioner argues that appellate counsel should have more aggressively argued in support of an "ineffective assistance" claim on appeal [D.E. 581 at 15-16]. As explained in detail above, Petitioner's "ineffective assistant" claims lack merit and/or have no impact on his ultimate sentence. Consequently, Petitioner is unable to establish prejudice in connection with this claim.

**B.** **<u>Petitioner is unable to show that counsel's representation "fell below an objective standard of reasonableness."</u>**

Although Petitioner's "ineffective assistance" claim may be disposed solely based on Petitioner's failure to satisfy the "prejudice" prong, dismissal is also dictated

by a review of the "performance" prong. Under the "performance" prong, "'[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) (quoting Strickland, 466 U.S. at 688). In determining whether defense counsel's representation was objectively reasonable, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As noted by the Supreme Court, because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," to make a fair assessment of counsel's performance "requires every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689; see also Sharpe v. Bell, 593 F.3d 372, 382 (4th Cir. 2010).

Petitioner claims that counsel performed inadequately by failing to raise several legal objections and, in the case of Rehaif, failing to anticipate a change in settled caselaw years before it occurred. As to the legal objections, as explained above, such arguments were meritless. As a matter of law, defense counsel does not commit ineffective assistance "by failing to raise [a] legally frivolous claim . . . ." West v. Jordan, 346 Fed.Appx. 312, 319 (10th Cir. 2009) (unpublished). As to the Rehaif claim, defense counsel is not ineffective by failing to create and pursue a novel legal challenge in the face of binding precedent. United States v. Morris, 917 F.3d 818, 823 (4th Cir. 2019). Thus, Petitioner fails to satisfy the performance prong of Strickland.

Because Petitioner's claim of ineffective assistance fails under both prongs of the Strickland test, his § 2255 petition should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Petitioner's Section 2255 Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted, this 11th day of January, 2021.

ROBERT J. HIGDON, JR.
United States Attorney

By: /s/ Dennis M. Duffy
   DENNIS M. DUFFY
   Assistant United States Attorney
   Civil Division
   150 Fayetteville Street
   Suite 2100
   Raleigh, NC 27601
   Telephone: (919) 856-4530
   Email: dennis.duffy@usdoj.gov
   N.C. Bar # 27225
   Attorney for United States of America

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 11th day of January, 2020, served a copy of the foregoing upon the below-listed party by electronically filing the foregoing with the Court on this date using the CM/ECF system or placing a copy in the United States Mail to the following:

Kejuan Tizom Shabazz Smith
Reg. No. 62815-056
USP Hazelton
P.O. Box 2000
Bruceton Mills, WV 26525

BY:  /s/ Dennis M. Duffy
DENNIS M. DUFFY
Assistant United States Attorney
Civil Division
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
Email: dennis.duffy@usdoj.gov
N.C. Bar # 27225
Attorney for United States of America